MOORHEAD v. WEBSTER et al.

(City Court of New York, Special Term. July 10, 1902.)

1. NEW TRIAL—NEWLY DISCOVERED EVIDENCE.
     To authorize a new trial, newly discovered evidence must appear to be of such a nature as to raise a reasonable ground to believe it would change the result.

Action by Silas E. Moorhead against David Webster, impleaded. Defendant moves for a new trial. Denied.

George E. Morgan, for the motion.
Paul Armitage, opposed.

O'DWYER, J. Motion made on behalf of the defendant for a new trial upon the ground of newly discovered evidence. With respect to two of the grounds upon which the motion is based I have no hesitancy in holding that the evidence has been discovered since the trial, and that it could not with reasonable diligence have been obtained upon the trial. The motion is therefore to be decided upon the claim made that the newly discovered evidence is material to the issue, and of such a nature as to raise a reasonable ground to believe that it would change the result. I have carefully read and considered the claim of the plaintiff, the defense of the defendant, the evidence and decision upon the trial, and the newly discovered evidence. In connection therewith I have consulted the opinions of Mr. Justice HASCALL (77 N. Y. Supp. 1050) upon the trial of this cause, and of Mr. Justice BARTLETT, for the appellate division, Second department, in a twin case, to the end that substantial justice be done in determining the application. A statement of the evidence given upon the trial is unnecessary, inasmuch as Mr. Justice HASCALL has exhaustively treated thereof in the learned opinion delivered upon deciding the issue. The result arrived at therein is that the defendant did not in good faith and in cash contribute $200,000 to the firm of Seymour, Johnson & Co., as stated in the affidavits and certificates filed pursuant to law, and hence is liable as a general partner for the debts of the firm. Several acts are assigned as violating the letter and spirit of the statute governing special partnerships with respect to the payment in good faith and in cash of the special capital, and withdrawal of a part thereof, viz.: That the contributions consisted of a transfer of credit balances standing upon the books of a pre-existing firm,—partly of money borrowed by the firm, and partly of United States bonds; that there was a withdrawal of $75,000 of the alleged special capital. The evidence upon the trial amply sustained the findings based upon these acts. In fact, I fail to discover upon the record how any other determination was possible. In a case so well considered and justly decided the newly discovered evidence must appear to be of such a nature as to raise a reasonable ground to believe that it would change the result. If the newly discovered evidence creates that belief, then a new trial will be ordered upon terms sufficient to compensate and safeguard the plaintiff. If not, then a new trial should be denied. After a most

thorough consideration of Mr. Johnson's deposition, and due deliberation had, I have reached the conclusion that not only does his testimony fail to suggest that if the same were presented a different result would follow, but, on the contrary, I am clearly of the opinion that it supports the claim of the plaintiff that the defendant did not in good faith and in cash contribute as special capital $200,000 to the firm of Seymour, Johnson & Co. The question arising herein is, did the defendant, within the meaning of the special partnership law, contribute to Seymour, Johnson & Co., in good faith and in cash, the amount certified to? It is immaterial whose money it was, so long as it was not money belonging to the firm, and the firm was enriched by it to the extent thereof. The newly discovered evidence is contained in the deposition of Frederick W. Johnson, one of the general partners, taken in an action wherein one Lord, trustee, etc., is plaintiff, and the various members of the firm of Seymour, Johnson & Co. and their assignee are defendants. The action is brought to recover from the assignee of Seymour, Johnson & Co. money that in part went to make up the alleged special capital, and it is claimed therein that that money was loaned to the firm. In the moving affidavit it is insisted that in this deposition it conclusively appears that the money contributed as special capital by the defendant was not a loan to the firm, but a direct gift or loan to defendant for the purpose of being contributed by him as special capital to the firm, and that in such money the firm, before it received it as special capital, had no title or interest. Let us see what Mr. Johnson has to say about the transaction:

"Q. 39. State the exact nature of the interest of David Webster in the firm of Seymour, Johnson & Co.? A. David Webster was nominally a special partner for $200,000. He merely lent his name to the firm, and the $200,000 special capital was checked to him by Seymour, Johnson & Co. through me, and thence checked back to Seymour, Johnson & Co. by David Webster. He never did, nor was to, receive any compensation or interest in the firm in any way." "Q. 53. Who contributed on or about January 2, 1900, the $100,000 supposed to be special capital of your firm? A. Robert A. Ammon contributed $40,000, and A. R. Goslin $60,000. * * * Goslin had a credit of $60,000 on our books brought over from the old firm. This represented his contribution to the new firm January 2, 1900. Ammon contributed his $40,000 as follows: Seymour met Ammon in the Wells, Fargo Co. office on Broadway, and in the presence of Mr. Parsons, of that institution, Ammon ordered the company to pay Seymour, Johnson & Co. $100,000, which they did by means of a check for that sum on the American Exchange National Bank. Seymour then delivered to Wells, Fargo & Co. a check of our firm for $60,000. This was the manner in which we received Ammon's contribution of $40,000 to our capital account." (See, also, questions 66, 67, 68, 69, and the answers thereto.) "Q. 57. Did the firm of Seymour, Johnson & Co. on or about January 2, 1900, file a certificate in the office of the clerk of the county of New York, in which it was stated that the defendant David Webster was a special partner in such firm, and that he had contributed the sum of $100,000 as his contribution to the capital? A. Yes, sir. Q. 58. Did David Webster contribute $100,000 to the firm of Seymour, Johnson & Co.? A. Yes, sir. Q. 59. If you answer the foregoing interrogatory in the affirmative, state the exact manner in which such contribution was made? A. Seymour, Johnson & Co. drew a check to me (F. W. Johnson) for $100,000. I indorsed this to Dr. Webster, receiving his check in return for the same amount, payable to the order of Seymour, Johnson & Co. on the Lincoln National Bank."

As to the second alleged contribution, under date of February 6, 1900, Johnson's testimony in his deposition is as follows:

"Q. 125. State exactly how the second $100,000 special capital of the firm of Seymour, Johnson & Co. was made up? A. The second $100,000 special capital of our firm was made up as follows, all contributed by Ammon: $10,000 which had been carried as a loan from December, 1899; $50,000 which we obtained about January 26, 1900, from Wells, Fargo & Co.; and $40,000 in United States government bonds, par value, which we obtained from Wells, Fargo & Co. about February 3, 1900."

See, also, question No. 129 and answer thereto.

Johnson also testifies that notes were given Ammon and Goslin for these alleged contributions. See question 143 and answer thereto. In regard to the withdrawal, Johnson states that Goslin withdrew from the firm in March $18,000 (see questions 179 and 180 and answers thereto), and that Ammon withdrew $10,000 (question 203 and answer thereto). Johnson further testifies that the $40,000 of bonds were not sold until March, 1900 (cross-question 11 and answer thereto). Johnson further testifies that both Ammon and Goslin received certain fixed percentages on their investments in the firm. Admitting, then, that the deposition of Johnson shows that the alleged special capital was a gift or loan to Webster by Ammon and Goslin, he would still be liable as a general partner, for it appears that the alleged special capital was not contributed in cash and in good faith, but, on the contrary, as follows: $70,000 by a transfer of credit balances, $40,000 in United States bonds, and only $90,000 in cash, and a withdrawal by the contributors of some $28,000. It is to be noted, however, that throughout Johnson's whole deposition he never once states or refers to the alleged contributions as a gift or loan to defendant, but, on the contrary, he testifies again and again that they were Ammon's and Goslin's contributions to the firm, and this is in accord with defendant's own testimony given at the trial, when he stated that he did not consider himself indebted to anybody for the money; that, so far as he was concerned, it was an accommodation; and that, as a matter of right, he did not consider the money he got from Johnson was his to keep, but simply to turn over to Seymour, Johnson & Co., and for that purpose given to him. It thus appears that, instead of relieving defendant from liability, the newly discovered evidence corroborates the testimony offered upon the trial. No other conclusion is possible, except from a prejudice or sympathy not tolerable in a court of justice.

Motion denied, with costs. Settle order on two days' notice.